## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BRADLEY G. DRUMMOND,

    Plaintiff

v.

JAMES DZURENDA, et. al.,

    Defendants

Case No.: 3:18-cv-00152-MMD -WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF No. 53

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 53, 53-1 to 53-9, 55-1.) Plaintiff filed a document he titled as his opposition to motion for summary judgment and his cross-motion for summary judgment. (ECF No. 58.) Defendants filed a reply. (ECF No. 66.) As Defendants' point out, to the extent Plaintiff titled his document a cross-motion for summary judgment, it was filed beyond the extended August 24, 2020 deadline for dispositive motions (ECF No. 51), and Plaintiff did not seek leave to file a belated cross-motion. In addition, even if it were timely, it does not comply with Rule 56's requirement that a party asserting a fact cannot be or is genuinely disputed must support the assertion by citing particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1). Plaintiff does not do so. Therefore, the filing should not be treated as a cross-motion for summary judgment, but only as a response to Defendants' motion.

Plaintiff then filed a "response to Defendants' Support of Motion for Summary Judgment" on September 28, 2020, where he attaches various notices of charges as well as an inmate grievance report with the first level response to grievance 2006-30-30917[1]. (ECF No. 67.)

Finally, Plaintiff filed a response to Defendants' reply. (ECF No. 68.) A response to a reply is known as a sur-reply. Sur-replies are not permitted without leave of court. LR 7-2(b). Plaintiff did not seek leave of court to file a sur-reply; therefore, it is recommended that his sur-reply (ECF No. 68) be stricken.

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 5.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are Ashley Angus, Renee Baker, Tara Carpenter, Paul Malay, and William Sandie. Defendant Godecke was dismissed without prejudice for failure to timely serve him pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 63.)

The court screened Plaintiff's complaint and allowed him to proceed with retaliation and equal protection claims against Defendants. (Screening Order, ECF No. 4.) He was also allowed to proceed with excessive force and retaliation claims against Godecke, but those claims have been dismissed without prejudice.

In Count I, Plaintiff was allowed to proceed with an equal protection claim against Baker, Carpenter, Malay and Angus, based on allegations that he was physically impaired and required crutches, and these Defendants denied him special access to the dining hall and forced him to

---

[1] This is the same as Defendants' exhibit set forth at ECF No. 53-5 at 8.

2

stand for count when other physically impaired inmates did not have to do the same, and without any rational basis.

In Count II, Plaintiff was allowed to proceed with a retaliation claim against Baker, Sandie, Carpenter, Malay and Angus. By way of background, Plaintiff alleges that he utilizes crutches, and on August 2, 2016, Godecke utilized excessive force against him, forcing him to hop on one leg without his crutches for more than 500 feet. He avers that after this, he was harassed for filing a grievance that reported Godecke's acts. Specifically, he alleges that Baker, Sandie, Carpenter, Malay and Angus retaliated against him by punishing him for filing the grievance reporting Godecke when: he was found guilty of a rule infraction and sanctioned to the loss of privileges given to phase 1 general population inmates; he was sanctioned to punishment not given by the hearing officer; and he was put in a restrictive housing unit. Baker and Angus allegedly told him, "This is what happens when you complain and write grievances." He claims that Angus told him that she would continue issuing write-ups every time Plaintiff would not stand for count.

In Count II, Plaintiff was also permitted to proceed with an equal protection claim against Baker, Carpenter, Malay and Angus based on allegations that he began getting notices of charges for rule violations unlike other inmates that violated the same rules, and they wrote him up for charges that other similarly situated inmates on the phase 1 yard did not get written up for.

Defendants move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies; (2) the equal protection claim fails because there was a rational basis for issuing the notice of charges to Plaintiff and Plaintiff cannot establish an intent and purpose to discriminate; (3) the retaliation claim fails because Defendants' actions were the result of plaintiff's violations of operating procedures and not retaliation for protected activity; and

(4) alternatively, Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

    **1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence

concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

**2. Analysis**

Exhaustion of administrative remedies within NDOC is governed by Administrative Regulation (AR) 740. Inmates are expected to resolve issues through discussion with their caseworker prior to initiating the grievance process, and if unsuccessful, inmates must pursue a grievance through three levels: the informal, first and second levels. Informal grievances must be initiated within 6 months for issues involving personal property, personal injury, medical claims or other tort claims, including civil rights claims. The failure to submit a proper informal grievance within the noted timeframe constitutes abandonment of the grievance at all levels. (ECF No. 53-3.)

An inmate may also file an emergency grievance. The shift supervisor may confer with on duty staff and determine whether the grievance constitutes an emergency. If the inmate requests further review of a claim not deemed an emergency, the inmate may file a grievance appeal commencing at the informal level. (*Id*.)

According to Plaintiff's complaint the issues giving rise to his claim occurred in August and September of 2016. (EF No. 5 at 2.) Since Plaintiff's alleged civil rights violations occurred in August and September of 2016, under AR 740, the informal level grievances had to be filed within six months, or by March of 2017. Defendants provide evidence that between August 2, 2016 and March of 2017, Plaintiff filed only two grievances: grievance 2006-30-20917 and grievance 2006-30-33314. (ECF No. 53-4.)

### a. Grievance 2006-30-20917

Plaintiff filed a grievance, 2006-30-20917, on August 9, 2016. He stated that on the morning of August 2, 2016, he and Godecke exchanged words about his coming through the back door on his crutches, with Godecke insisting that Plaintiff had to get a medical slip giving him permission to use the back door, which Plaintiff claimed was safer for him. Godecke made him go down and walk using the regular inmate line while on his crutches, which Plaintiff claimed was dangerous because there is a narrow walkway between the railing and adjacent wall and he was using crutches. Godecke then handcuffed Plaintiff while on his crutches, and Plaintiff told him he could not walk without his crutches. Godecke said he could walk because Godecke had seen him do so. Then Godecke yanked him several times, twisting his left knee. Plaintiff stated; "The reason for the grievance is because C/O Godeckie handcuffed me on the crutches which jeopardized my safety and well being, I could have fallen [and] hit my head on a table or the ground causing me to have a seizure which I suffer from." (ECF No. 53-5 at 11-15.)

M. McClellan responded to the informal level grievance, stating that according to medical there was no reason that Plaintiff could not stand in line for meals, and he should have followed the officer's advice to go to medical and either have a "lay in" order or medical slip advising staff of any and all restrictions. Instead, Plaintiff became argumentative and belligerent toward staff. He was advised see medical to follow up on any restrictions so staff are aware and cognizant of all constraints and limitations. (ECF No. 53-5 at 12.)

Plaintiff filed a first level grievance on October 24, 2016. He stated that he followed Godecke's advice and went to medical to get a slip to okay him to use the exit door to come and sit down while his cellmate got his tray. Medical told him that "[we] don't do that here" and that he "would have to fend for [him]self." He did not deny they "had some words." Plaintiff

9

continued to state that the whole point of his grievance was that Godecke should never have handcuffed Plaintiff while he was on his crutches, but should have called search and escort to escort him to operations. He went on to state that he next day C/O Rodriguez told me he talked to the sergeants and lieutenants and they told him that Plaintiff could go through the exit door and sit down while his cellmate or someone got his tray for him. He explained that if he went through the "chow line" on his crutches and tripped and fell and got hurt, the prison and officers on duty would be liable. (ECF No. 53-5 at 7, 9.)

Carpenter issued an improper grievance memorandum because Plaintiff had not submitted his informal grievance with the first level, and directed Plaintiff to resubmit. (ECF No. 53-5 at 10.) Plaintiff appears to have resubmitted the first level grievance with informal level. (*See* ECF No. 53-4 at 3-4.)

Baker responded to the first level grievance, finding that Godecke followed policy and procedure once Plaintiff was placed in restraints, as a hands-on escort was administered to ensure Plaintiff did not fall or trip, by holding the inmate's arm to guide the inmate. She also found Plaintiff's behavior was inappropriate and uncalled for. She went on to state:

> Secondly, it then appears that your verbiage becomes no better with review of a Misconduct report dated September 11th, 2016, and then your refusal to follow direct orders on September 15th and 16th, 2016 (failure to stand for Health and Welfare count) which has now lead to a guilty General Violation and a Level Reduction. Grievance denied.

(ECF No. 53-5 at 8.)

He filed a second level grievance on January 3, 2017. He reiterated that Godecke should have detained him until search and escort got there to escort him while he was on his crutches, but Godecke started yanking and dragging him around. (ECF No. 53-5 at 2, 5.)

10

Carpenter issued an improper grievance memorandum for the second level grievance on January 5, 2017, as Plaintiff did not include the informal and first levels, and directed Plaintiff to resubmit with those attached. (ECF No. 53-5 at 6.)

Plaintiff appears to have resubmitted the second level grievance. (ECF No. 53-4 at 4-5.)

Tristan responded to the second level grievance, stating that it was forwarded to the Inspector General's Office for investigation, and insofar as that was done the grievance was partially granted. (ECF No. 53-5 at 3-4.)

While Plaintiff briefly references being able to go through the exit door to get into the dining hall, Plaintiff made clear at all levels that the purpose of his grievance was to address Godecke's conduct in escorting him while using his crutches. Moreover, the grievance never asserted that by not allowing him to go through the exit door, he was being treated differently than similarly situated inmates. Instead, the focus of the grievance was admittedly Godecke's behavior.

The claim against Godecke has been dismissed without prejudice. This grievance did not serve to exhaust administrative remedies with respect to his equal protection or retaliation claims against the remaining defendants.

**b. Grievance 2006-30-33314**

Plaintiff filed a second grievance, 2006-30-33314, which was an emergency grievance, on September 16, 2016. Plaintiff stated that he was filing the emergency grievance on Angus because Plaintiff would not stand during count. Plaintiff said that he told her that the doctor told him to stay off of his leg and that he only walks with crutches to chow, pill call and the shower. He felt her conduct was in retaliation for filing the grievance against Godecke. (ECF No. 53-6 at 2.)

There is a response to the grievance that same day, which advised Plaintiff that it was not an emergency as outlined in AR 740, and that Plaintiff was required to stand for count, and his refusal would result in a notice of charges. (*Id.*) At the bottom of the grievance, which Plaintiff signed, it states: "A FORMAL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES." (*Id.*)

Plaintiff did not pursue the grievance further as he was required to do under AR 740. Therefore, this grievance does not serve to have exhausted administrative remedies with respect to the remaining claims proceeding in this action.

**3. Conclusion**

Plaintiff has not argued, let alone produced evidence, to demonstrate that he filed another grievance that may have exhausted his administrative remedies. Nor has he provided argument or evidence that administrative remedies were somehow unavailable to him. Therefore, Defendants' motion for summary judgment should be granted. While an unexhausted claim is normally dismissed without prejudice, Plaintiff could not timely initiate a grievance for these claims at this point under AR 740; therefore, the dismissal should be with prejudice.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **STRIKING** Plaintiff's sur-reply (ECF No. 68) as unauthorized under Local Rule 7-2(b), and **GRANTING** Defendants' motion for summary judgment (ECF No. 53).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 27, 2021

*William G. Cobb*
William G. Cobb
United States Magistrate Judge